# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARSHALL THOMAS COBB, SR., | ) |
|         Petitioner, | ) |
| v. | )   No. 1:09-cv-1318-SEB-MJD |
| ALAN FINNAN, | ) |
|         Respondent. | ) |

## Entry Discussing Petition for Writ of Habeas
## Corpus and Denying Certificate of Appealability

For the reasons explained in this Entry, the petition of Marshall Thomas Cobb, Sr. ("Cobb") for a writ of habeas corpus must be **denied** and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

## The Petition for Writ of Habeas Corpus

### I. Nature of the Case

Cobb seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a).

### II. Parties

Cobb is confined at a state prison in Indiana. The respondent is Cobb's custodian, sued in his official capacity as a representative of the State of Indiana.

### III. Procedural Background

Cobb was convicted in 2003 in Bartholomew County of child molesting. His convictions were affirmed on direct appeal in *Cobb v. State,* No. 03A01-0306-CR-209 (Ind. Ct. App. 2004) (*Cobb I*). Cobb did not seek transfer to the Indiana Supreme Court. The trial court's denial of Cobb's petition for post-conviction relief was affirmed on appeal in *Cobb v. State*, No. 03A04-808-PC-404 (Ind.Ct.App. 2009)(*Cobb II*). The filing of this action followed. The record has been appropriately expanded.

## IV. Statement of Facts

The evidence relating to Cobb's offenses as set forth on direct appeal is as follows:

In June of 2002, Cobb – then fifty years old – hosted a slumber party at his house for two of his grandchildren and his granddaughter's eleven-year-old friend, S.S. After a long night of playing games and swimming, Cobb instructed the children that it was time for bed. S.S. had planned on sleeping in her clothes, but Cobb ordered her to wear one of his t-shirts to bed instead. Sometime after the two girls had retired for the night in the back bedroom, Cobb entered the room and asked the girls if they would like to swim naked with him in the pool. The girls refused and went back to sleep. A little later, Cobb returned to the room and told his granddaughter to go sleep on the sofa bed in the living room.

After his granddaughter left the room, Cobb removed S.S.'s panties, held a towel over her mouth and nose, and instructed her to keep her eyes closed. Cobb then put an unidentified substance on his hands and on one of S.S.'s hands and began fondling S.S.'s vagina. He then placed S.S.'s hand on his penis and made her masturbate him. At one point, S.S. opened her eyes and observed "white stuff coming out" of Cobb's penis as he repositioned himself to insert his penis into her vagina. As Cobb penetrated S.S.'s vagina, he forced her to kiss him on the lips. After hearing what he believed to be his grandson waking up, Cobb told S.S. to get dressed and go out to the sofa bed with his granddaughter.

The next morning, Cobb instructed S.S. to remain at the house for the gas man while he and his grandchildren went to pick up a third grandchild. Cobb took the cordless telephone with him when he left. Cobb returned alone, locked the front door, and ordered S.S. to lock the back door. S.S. went to the back door, but instead of locking it, she escaped through it. As SS. fled from Cobb's house, she slipped off her shoes so that she could run faster and did not even stop to pick up some money that she dropped as she jumped over the backyard fence. Cobb apparently fled to another state after S.S. made her escape. After Cobb's son realized that both his father and S.S. were unaccounted for, he called over to S.S.'s house to see if she may be there and whether she knew where his father might be. S.S. explained to Cobb's son what had happened during the slumber party, as well as that morning. Cobb's son called the police and S.S. was taken to the hospital. At the hospital, S.S. complained of vaginal soreness, and a physical exam revealed bruising on her labia. Additionally, the hospital staff performed a vaginal wash on S.S. An analysis of the vaginal wash revealed DNA matching Cobb's to a certainty of 220,000,000,000,000,000,000 (220 quintillion) to one. A few days later, Cobb contacted his daughter and asked for money. He explained that he had abandoned his car in a Wal-Mart

parking lot before absconding to Fort Worth, Texas. Eventually, authorities located Cobb in Tulsa, Oklahoma, and extradited him to Indiana. The State charged Cobb with Child Molesting as a Class A felony and Rape as a Class B felony.

*Cobb I*, at pp. 2-4 (footnotes omitted).

**V. Applicable Law**

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Cobb filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997). When a habeas petitioner's claim was adjudicated on the merits in State court proceedings, section 2254(d) provides that a federal court may grant a writ of habeas corpus only if that adjudication was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The following principles guideline the AEDPA analysis.

> ! A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 404-08 (2000).

> ! "A state court decision is contrary to clearly established law if it applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court's treatment of a materially identical set of facts. A state court unreasonably applies Supreme Court precedent if the state court identifies the correct legal rule but applies it in a way that is objectively unreasonable. *Bynum v. Lemmon,* 560 F.3d 678, 683 (7th Cir. 2009)(internal citations omitted).

> ! "Clearly established federal law" means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003).

> ! Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Williams,* 529 U.S. at 407; *see also Badelle v. Correll,* 452 F.3d 648, 653 (7th Cir. 2006). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 130 S. Ct. 841, 845 (2010).

> "Under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010).

> "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004)(citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)). With respect to § 2254(d)(2), state-court determinations of factual issues are "presumed correct" unless the petitioner can rebut the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Sprosty v. Buchler,* 79 F.3d 635, 643 (7th Cir. 1996).

In addition to the foregoing substantive standards, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* 508 U.S. 962 (1993). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims *because the prisoner had failed to meet a state procedural requirement.*" *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991) (emphasis added).

> A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time--as state rules define those courts, ways, and times. Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review.

*Szabo v. Walls,* 313 F.3d 392, 395 (7th Cir. 2003) (citing cases); *Moore v. Bryant,* 295 F.3d 771, 774 (7th Cir. 2002) ("A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment."). When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.,* the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.,* a claim of actual innocence)." *Conner v. McBride,* 375 F.3d 643, 648 (7th Cir. 2004) (internal citations omitted); *see also Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002), *cert. denied,* 537 U.S. 1214 (2003).

## VI. Cobb's Claims

Cobb seeks habeas corpus relief based on the following claims: 1) there was error by the trial court at trial and in the post-conviction proceeding; 2) Deputy Prosecutor Kathleen Burns engaged in prosecutorial misconduct; 3) trial counsel rendered ineffective assistance; 4) appellate counsel rendered ineffective assistance; 5) Detective John Martoccia engaged in misconduct; and 6) Detective Greg Duke engaged in misconduct.

## VII. Analysis

### A. Trial Error and Prosecutorial Misconduct

Cobb claims that Judge Heimann (1) improperly provided notes to the State's medical expert, and (2) was biased and prejudiced against Cobb. The specifications supporting this second claim are that Judge Heimann was biased by: (a) failing to provide attorney at initial appearance; (b) improperly admitting tainted evidence at trial regarding DNA and related evidence; (c) improperly allowing the State to have Cobb moved during victim's testimony so that they were not face to face; (d) allowing the State to violate principles of double jeopardy for using the same evidence to convict Cobb of rape and child molesting; (e) allowing the State to hide discovery; (f) keeping a hearing regarding discovery a secret; (g) denying Cobb's witnesses on post-conviction review; (h) denying Cobb's motion for depositions during post-conviction review; and (i) denying Cobb a fair and just trial, sentencing, hearing, or post-conviction hearing.

Cobb's claim here in part is that Judge Heimann denied Cobb's witnesses, motion for depositions and a fair and just hearing, all at post-conviction. These claims do not support a challenge cognizable in habeas corpus. *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.) ("[u]nless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief"), *cert. denied,* 519 U.S. 907 (1996); *Williams v. State,* 640 F.2d 140, 143-44 (8th Cir.) ("Infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. . . . Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."), *cert. denied,* 451 U.S. 990 (1981).

Regarding Cobb's claim that Judge Heimann improperly provided notes to the State's medical expert and was biased and prejudiced against Cobb and his claim that Deputy Prosecutor Kathleen Burns engaged in prosecutorial misconduct, the Indiana Court of Appeals noted that Cobb waived those claims that were known and available at direct appeal but not argued. *Cobb II,* at p. 8-9.

In his reply to the respondent's return, Cobb states regarding the injuries to S.S "[t]here was none, because it didn't happen" and that "[t]here was no evidence presented that should [sic:showed] [S.S.] had been raped, or forced to have sexual intercourse. There

-5-

was no testimony from either medical expert saying their expert opinion was that [S.S.]had been touched at all." This may be Cobb's attempt to invoke the fundamental miscarriage of justice exception to the doctrine of procedural default. If so, however, it is insufficient. In *Schlup v. Delo,* 513 U.S. 298, 327 (1995), the Supreme Court explained that to establish a "fundamental miscarriage of justice" a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (quoting *Murray v. Carrier,* 477 U.S. at 496). And, in order to establish a claim of actual innocence "he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Perruquet v. Briley,* 390 F.3d 505, 515 (7th Cir. 2004) (citing *Schlup*). Cobb offers no evidence of his actual innocence here, and the court discerns no basis on which such an argument could be asserted.

Accordingly, because of his unexcused procedural default, the court does not reach the merits of Cobb's claims that Judge Heimann improperly provided notes to the State's medical expert, that Judge Heimann was biased and prejudiced against Cobb, and that Deputy Prosecutor Kathleen Burns engaged in prosecutorial misconduct.

### B. Ineffective Assistance of Trial and Appellate Counsel

Cobb claims that he was denied the effective assistance of counsel. Cobb claims his trial counsel rendered ineffective assistance by: (1) inadequately preparing a defense for trial; (2) inadequately questioning witnesses; (3) failing to accompany Cobb during DNA evidence collection; (4) failing to call Detective Duke at a suppression hearing; (5) failing to call a nurse as a witness regarding the collection of DNA evidence; and (6) failing to call a victim to testify regarding conflicting testimony between she and another witness. Cobb also claims that he was denied the effective assistance by appellate counsel Donald Dickherber. Cobb claims that Dickherber refused to file issues raised by Cobb regarding misconduct by the trial court and prosecutor, ineffective assistance of trial counsel, and insufficiency of the evidence.

A defendant has a right under the Sixth Amendment to effective assistance of counsel at trial. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Id.* For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.,* at 687. The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers.

With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). In determining whether counsel's performance was constitutionally deficient, the Court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert,* 388 F.3d 1052, 1059 (7th Cir. 2004). With respect to the prejudice requirement, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers. *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir. 1987). An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. *Lee v. Davis,* 328 F.3d 896, 900-01 (7th Cir. 2003). To establish the *Strickland* prejudice prong, a defendant must show that there is a reasonable probability that appellate counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *Id.*, at 901 (for a claim to support relief, it must be reasonable probability that issue not raised would have altered outcome of appeal).

When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009)(internal citations and quotations omitted).

The Indiana Court of Appeals reviewed Cobb's claims and explained that Cobb failed to introduce a transcript of the trial proceedings and accordingly, there was no record to assess these claims except as to those for which evidence was introduced at post-conviction. *Cobb II*, at pp. 10-11. As to those ineffectiveness claims as to which evidence was introduced at post-conviction:

> We need not decide whether counsel's performance was deficient because Cobb has failed to demonstrate that these actions caused him prejudice. We conclude that these actions were not reasonably likely to have affected the outcome of Cobb's trial. As our Court previously described, the evidence introduced at trial demonstrated that S.S. suffered trauma to her labia and that a rape kit revealed the presence of what was almost certainly Cobb's DNA. This evidence almost conclusively disproved Cobb's claim of innocence. Cobb was not so prejudiced that there was a reasonable probability the result of his trial would have been different.

*Id.*, at pp. 11-12 (internal citation omitted).

As to appellate counsel, Cobb claims that Donald Dickherber refused to file issues raised by Cobb regarding errors by the trial court and prosecutorial misconduct, ineffective assistance of trial counsel Wells, and insufficiency of the evidence. First, in Cobb's petition for transfer, he claimed that appellate counsel was ineffective, stating that he has "over and over" satisfied *Strickland*. However, Cobb procedurally defaulted his ineffective assistance of appellate counsel claim by not properly raising them in his petition for transfer. Second, even if Cobb's mention of his appellate ineffectiveness claim in his petition for transfer averts the procedural default of such claim, Cobb still runs into hurdles with his claim. Specifically, at post-conviction, Cobb claimed that appellate counsel refused to make arguments on direct appeal that counsel felt would not succeed. Cobb cited a letter from Dickherber, but the Indiana Court of Appeals explained that:

> There is no indication from the record that Cobb submitted this letter to the trial court, and we will not consider it on appeal. Cobb chose not to subpoena his appellate counsel to testify, he did not testify himself, and he presented no other evidence regarding the effectiveness of appellate counsel. Because Cobb presented no evidence to the trial court regarding the performance of his appellate counsel, he failed to carry his burden to persuade us that his counsel's performance was deficient and that he suffered prejudice.

*Id.* at p.12 (citation omitted).

As the foregoing shows, the Indiana Court of Appeals in *Cobb II* "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Cobb's claims of ineffective assistance of counsel at trial and on appeal do not support the award of habeas corpus relief. *Murrell,* 332 F.3d at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

### C. Police Misconduct

Cobb claims that Detective Greg Duke and Detective John Martoccia engaged in police misconduct. Cobb raised this claim for the first time in his petition for transfer. As set forth above, claims raised for the first time in a discretionary appeal are barred by the full and fair presentment doctrine. Accordingly, Cobb has procedurally defaulted his claims of police misconduct.

## VIII. Conclusion

This court has carefully reviewed the state record in light of Cobb's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than

a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Cobb to relief in this case. Cobb's petition for a writ of habeas corpus [1] is therefore **denied.**

Cobb's motion for hearing and for appointment of counsel has also been considered. Counsel would in fact be appointed if the court found the need to conduct an evidentiary hearing in this case. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987). However, such a proceeding is only necessary when a more extensive factual record must be compiled to decide an issue. *See Newell v. Hanks*, 283 F.3d 827, 838 (7th Cir. 2002). That is not the case here. Accordingly, Cobb's motion for hearing and for appointment of counsel [38] is **denied.**

Judgment consistent with this Entry shall now issue.

### Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254* proceedings, and 28 U.S.C. § 2253(c), the court finds that Cobb has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling[s]." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 03/10/2011

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana